Cornwall v. McFarland Real Estate Co.

CORNWALL, Appellant, v. McFARLAND REAL ESTATE
COMPANY.

Division Two, June 6, 1899.

1. **Contract**: RESCISSION: REPRESENTATIONS AS TO VALUE OF PROP-
ERTY: MATTERS OF OPINION. Representations as to the money and
rental value of property which was open to observation and of whose
value one who had contracted to trade for it knew or might have
known, being mere matters of opinion, afford no ground for the rescis-
sion of a contract, although such representations may have been
untrue; and although the representations are supported by state-
ments of the frequent recent sales of the property at certain specific
sums and of the property renting at a certain annual rental, yet they
are still mere matters of opinion, the party to whom they are made
being in a position to personally examine the property and ascertain
whether or not it was rented.

2. ———: ———: LEGAL: COUNTERCLAIM. Where the suit is for the
rescission of a contract on the ground that it was obtained through
false representations, and the defendant set up a counterclaim
which is in the nature of an action at law, and no instructions are
given or refused, and no objection is urged to the admission or ex-
clusion of evidence, and there is substantial evidence to support the
judgment of counterclaim, that judgment must stand.

*Appeal from St. Louis City Circuit Court.*—HON. L. B.
VALLIANT, Judge.

AFFIRMED.

FISSE & KORTJOHN for appellant.

(1) The falsity of these specific statements of fact be-
ing conceded, it is impossible to avoid stigmatizing them as
fraudulent. Herman v. Hall, 140 Mo. 270; Rothschild v.
Mack, 115 N. Y. 1; Marsh v. Falker, 40 N. Y. 562; Knap-
pen v. Freeman, 47 Minn. 491; Borders v. Kattlemann, 31
N. E. 19; Caldwell v. Henry, 76 Mo. 254; Dunn v. Oldham,

63 Mo. 181; Hamlin v. Abell, 120 Mo. 188; Holland v. Anderson, 38 Mo. 55; Bailey v. Smock, 61 Mo. 213. That false statements as to the cost of property are sufficient to justify a judgment of rescission, or for damages, has been often decided. Manning v. Albee, 11 Allen, 520; McAleer v. Horsey, 35 Md. 439; Bradley v. Luce, 99 Ill. 234; 1 Bigelow on Fraud, 493; Garrett v. Wannfried, 67 Mo. App. 437. (2) The contract is one so hard and unfair that specific performance would have been denied defendant. Therefore, it can not have reparation in damages for a breach of the contract. 1 Bigelow on Fraud, 74; Smith v. Hughes, 50 Wis. 620; 1 Pomeroy, Eq. Jur., sec. 110; Fry, Specific Performance, p. 180; 2 Story, Eq., sec. 769; Veith v. Gierth, 92 Mo. 104; Pomeroy v. Fullerton, 131 Mo. 592. (3) The counterclaim counts upon a right of action which is essentially a contract right and must be treated as a count for a breach of contract. Kerr v. Simmons, 82 Mo. 275; Clark v. Clark, 86 Mo. 124.

McKEIGHAN, BARCLAY & WATTS for respondent.

(1) The whole issue of alleged fraud, as claimed here by plaintiff, depends on the value of speculative property, a "tonic beer" business (on one side) and a mortgage, secondary to prior liens (on the other side). Where a representation is of the value of such property, and both parties are on equal footing, any "puffing" or expressions of value are not actionable. Anderson v. McPike, 86 Mo. 293; Nauman v. Oberle, 90 Mo. 666. (2) A party to a cause is bound by the statements he makes as a witness as much as though the statements were in his pleadings. State v. Brooks, 99 Mo. 137. (3) When a certain conclusion follows from admitted facts, as a matter of law, no instructions are necessary to a review of a conclusion other than that one, even in an action at law. Kronenberger v. Hoffner, 44 Mo. 185. (4) Where a party acts on his own judgment and does not rely on the

statements of another in making a contract, he can not claim fraud where the subject-matter (as that of value of speculative property) is equally known to both parties. Anderson v. McPike, 86 Mo. 293; Powell v. Adams, 98 Mo. 598.

BURGESS, J.—This is a proceeding in equity for the rescission of a contract entered into by plaintiff and defendant by which plaintiff sold to defendant a certain "tonic beer" business belonging to him, and conducted in the city of St. Louis, in consideration of the amount of $14,000, secured by a deed of trust on property in that city. As part of the consideration plaintiff obligated himself to lease the business from defendant during part of the year 1896, and to pay therefor the sum of $3,500. In addition to what has been stated the petition alleges as part of the transaction, that defendant agreed to obtain for him on ten days notice, and at any time within thirty days after October 24, 1895, the price of $5,000 in cash for the $14,000 deed of trust.

The ground alleged for rescission of the contract is that plaintiff was induced to enter into it by reason of the defendant's false and fraudulent representations concerning the value and income of the property, which constituted the security for the notes which formed the consideration of the trade.

These representations are alleged to be:

First. Assurance that the property in question, though encumbered with debts to the amount of $66,000 (including the deed of trust for $14,000 in question here), was actually worth $100,000, and that, within a short time previous to this transaction, it had actually been sold at that price.

Second. That the property was actually of an annual income value of $9,600 per year, and actually paid in rental income a sufficient sum to provide for the payment of all taxes against the property, for interest on senior mortgages, and leave about $2,000 per year to be applied to the dis-

charge of certain incumbrances senior to this $14,000 deed of trust, which last mentioned deeds, by their terms, were payable out of the rents, which had been assigned for that purpose.

The answer of defendant admits the trade, and its terms, the delivery by it in payment of the contract price, $14,000, in notes secured by deed of trust; the lease of the property by plaintiff from May 1 to September 1, 1896, at $3,500, all as alleged, but denies all other allegations in the petition.

And by way of counterclaim it alleges the assignment by defendant to plaintiff of the note for $14,000 dated September 4, 1895, and the deed of trust by which its payment was secured, as alleged in plaintiff's petition, then proceeds as follows: ·

"That on and prior to the said 29th day of October, 1895, the plaintiff, John Cornwall, was the owner of a certain business conducted by him in the city of St. Louis, wherein he was engaged in the manufacture of what is known as Doctor Cornwall's Tonic Beer, the formula of which beer or tonic was secret and wholly unknown to any person other than the plaintiff herein.    That plaintiff was also the owner of certain personal property, used by him in conducting said business as aforesaid, which said property is more particularly described as 'one lot of machinery, one lot of appliances, patented and otherwise, used in and for said business, certain wagons and fixtures, certain live stock and harness on hand, all feed for live stock, one lot of advertising matter of any nature, one lot of bottles and cases for shipping same, subject to customers' rebate for same, one lot of labels, a stock of beer on hand in factory and in city of St. Louis, one lot of office fixtures, certain raw material for compounding said beer or tonic, and certain trade-marks and letters patent.'

"That being the owner of said business and property used in conducting same, plaintiff, John Cornwall, represented to the defendant herein that said business was very profitable, earning over $6,000 per annum, and together with its good will, was reasonably worth at least the sum of $14,-000, and at the same time plaintiff offered to sell said business, the good will thereof, and the property used in conducting same, as aforesaid, together with the disclosure to the defendant of the formula for making said tonic beer, and an agreement thereafter to preserve the secret of said formula inviolate, and never thereafter to engage in the manufacture of said beer or tonic, for the sum of $14,000.    That defendant then and there offered to purchase said property of plaintiff if plaintiff would lease the said business for the months of May, June, July and August, 1896, for $3,500, payable the first day of May 1896, said lease to be executed in due form, accompanied by an agreement to accept the plant and business as found, and leave said business in like condition, the usual wear and damage excepted.

"That in consideration of the delivery to him by defendant of said note for $14,000, and said interest notes, together with the deed of trust securing said notes, as hereinbefore particularly described, plaintiff, John Cornwall, thereafter, to wit, on the said 29th day of October, A. D. 1895, by instrument of writing by him executed and delivered to defendant, transferred to defendant, the property and good will of said business, so carried on by him as aforesaid, and also agreed and bound himself to disclose to defendant the full details for the receipt or formula for the preparation of said beer or tonic so manufactured by him, and that he would never disclose said formula to anyone else, and that he, his heirs or assigns, would never thereafter engage in the manufacture or sale of said beer or tonic, either in the city of St. Louis or elsewhere, and also executed and delivered to defendant his lease of said business for the

months of May, June, July and August, 1896, wherein he agreed to pay defendant for the use and occupation of said business during the said months the sum of $3,500 as aforesaid, payable on the first day of May, 1896.

"That, thereafter, when defendant went to take actual possession of said property and business, the plaintiff, wholly without any legal justification or excuse, denied defendant entrance to the place where said property was, and unlawfully and fraudulently refused to deliver the possession of same, or any part thereof to defendant, but converted the same to his own use.

"Defendant further states that the said business so conducted by plaintiff is a large and profitable one, and the property thereof, its good will, the formula for making said beer and tonic, and the letters patent and trade-marks thereof are reasonably worth the sum of fourteen thousand dollars. That defendant, in addition to being damaged to the extent of the value of said business so sold to it by plaintiff, and subsequently by him converted to his own use in fraud of the rights of this defendant, has also lost the amount to be paid to it by plaintiff for the lease of said business for the months of May, June, July and August, 1896, all to defendant's damage in the sum of $20,000."

"Whereof defendant prays judgment against plaintiff herein for the sum of $20,000," etc.

Plaintiff replied denying all new matter contained in the answer.

The case was tried by the court, a jury being waived.

There was a finding in favor of defendant, both on plaintiff's case, and upon the counterclaim set up by defendant, upon which its damages were assessed at the sum of $5,000.

After unsuccessful motions for a new trial both parties appeal.

The evidence tended to show that defendant through its members and agents made false representations to plaintiff with respect to the value of the property, its rental value, its sales during the past year, first for $75,000, and twice thereafter for $100,000, which constituted the security for the payment to him of the $14,000 and by which he was induced to make the trade, but it also showed that the property was open to observation and that he either knew, or might have known, both its money and rental value. As to the representations in regard to the money and rental value of the property they were mere matters of opinion, and although untrue furnished plaintiff no ground for a rescission of the contract. It is clear that no warranty was intended as to these values by the representations with respect thereto; and "a mere false assertion of value, where no warranty is intended, is no ground for relief to a purchaser, because the assertion is the matter of opinion which does not imply knowledge, and in which men may differ; mere expression of judgment or opinion does not amount to warranty. Every person reposes at his peril in the opinion of others, when he has equal opportunity to form and exercise his own judgment." [2 Kent Com. (14 Ed.), star page 486; Anderson v. McPike, 86 Mo. 293; Nauman v. Oberle, 90 Mo. 666.] But plaintiff insists that this rule applies only to representations which are mere matters of opinion, and that the representations in regard to the money and rental value of the property were not limited, but there was added thereto specific statements of facts relating to the defendant's own transactions with the property and its own experience in dealing with it; that the statement of these specific facts, of material importance in passing upon the value of this security, removes the representations out of the realm of mere opinion. But, after all, these sales had they actually occurred could only have been considered as a circumstance tending to

show the rental value of the property, which as we have said was matter of opinion. Moreover, plaintiff could have made personal examination of the property covered by the mortgage had he desired to do so, and thus formed his own judgment as to its value, and also have learned whether it was rented or not. Nothing was done by defendant to prevent him from so doing, and, if he chose to rely upon defendant's representations with respect to its cash and rental value rather than do so it was his own fault.

It follows that plaintiff failed to make out his case, and is therefore not entitled to any relief.

The judgment for defendant upon the counterclaim is assailed upon various grounds, but as the counterclaim was in the nature of an action at law, and no declarations of law were given, or refused, and as it is not suggested by plaintiff in his brief wherein the court erred in the admission or exclusion of evidence, the only question is, whether the evidence as a matter of law, sustains the conclusion reached. Under such circumstances this court will not interfere unless the judgment is wholly unsupported by substantial testimony.

About the only testimony of the value of the "tonic beer" business was that of plaintiff and Alexander L. Shultz. According to plaintiff's statement he began with $10,000 and had been adding to the establishment since. The value of the formula was utterly speculative and no value could be fixed upon it.

By the terms of the contract plaintiff was to pay $3,500 for the rental of the "tonic beer" plant and business for the months of May, June, July and August, 1896. According to this testimony the earning capacity of the business could not have been less than the sum of $14,000. The witness Shultz also testified that plaintiff told him that the business in question was worth $30,000 and that it produced an income of from $6,000 to $8,000. So that it is clear that there

was abundance of evidence to authorize the finding and judgment of the court.

For these considerations we affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.