ABSTRACTING — TERMS An " abstract book " would appear to be a written or printed volume, bound or unbound, containing an abridgement, compendium, synopsis, or summary of the material facts necessary for the production of an adequate abstract of title, and that "other system of indexes" would appear to mean an orderly combination or arrangement of references pointing out the pages of an abstract book where certain articles or subjects may be found as well as containing such information as is necessary to enable an adequate title search without recourse to the county records. The books, records, files and indexes in the County Clerk's Office may be copied provided that said records are not removed from said office; however, as noted earlier mere copies of the County Clerk's records and the Clerk's indexes to those records are not sufficient as, ". . . An independent set of abstract books or other system of indexes compiled from instruments of record affecting real estate in the office of the County Clerk" within the meaning of Section 13. Both abstract books and indexes are not necessarily required in order to comply with the provisions of 1 O.S. 13 [1-13] and that the adequacy or inadequacy of such books or indexes must be determined on an individual basis. The Attorney General has received your request for an opinion regarding 1 O.S. 13 [1-13] (1971), wherein you, in effect, ask the following questions: (1) What does the phrase "abstract books" mean? (2) What does the phrase "other system of indexes" mean? (3) May the books of record, or the microfilms of such books, maintained by the county clerk be copied? (4) May the indexes maintained by the County Clerk be copied? (5) Are both "abstract books" and an "other system of indexes" required in order to engage in the business of abstracting? Title 1 O.S. 13 [1-13] (1971), reads as follows: "In addition to the bond required by Section 8513 O.S. 1931 any person, firm or corporation, now engaged in the business of abstracting, desiring to enter into the business of compiling or abstracting titles to real estate in any of the counties of the State of Oklahoma from and after the passage of this Act, shall have for use in such business an independent set of abstract books or other system of indexes compiled from the instruments of record affecting real estate in the office of the County Clerk, and not copied from the indexes in said office, showing in a sufficiently comprehensive form all instruments affecting the title to real property on file or of record in the office of the County Clerk and Court Clerk of the county wherein such business is conducted." (Emphasis added.) This office has found two cases wherein the court specifically discussed the phrase "abstract books." It is interesting to note that both discussions were directed at describing what an abstract book is not, as opposed to what it is. Hess v. D. T. Draffen and Co., 74 S.W. 440, 441, 99 Mo. App. 580, State, ex rel. Freeman v. Abstractors Board of Examiners, 45 P.2d 668, 671, 99 Mont. 564
. In Hess, supra, the court stated that: "Books which contain only an index to the books of the recorder of deeds for the county, showing the different conveyances of land, and the books and pages where they might be found, not containing an abridgement of the contents of the different instruments, including the acknowledgements or the manner in which they were executed, nor their dates, are not complete abstract books." Going further in attempting to arrive at a usable definition for this phrase, one might very well break it down into its component words. 1 C.J.S. Abstract, at page 377, defines an abstract as follows: "As commonly understood, and by definition, an abridgement: a compendium; a complete history in short, abbreviated form; an epitome; a synopsis; a synopsis or summary of the material facts. "It ordinarily means a mere brief. and not a copy of that from which it is taken, although sometimes used in the sense of copy. That which comprises or concentrates in itself the essential qualities of a larger thing, or of several things. It denotes a less quantity containing the virtue and force of a greater quantity; it implies an antecedent subject from which it is made or taken." Black's Law Dictionary, Revised Fourth Edition (1968), defines "book" as: "An assembly or concourse of ideas expressed in words. A literary composition which is printed; a printed composition bound in a volume. The largest subdivisions of a treatise or other literary composition." Another definition of "book" which seems especially applicable to your inquiry is found in the case of Scoville v. Tolarld, 21 F. Cas. 863, 864, which contains the following language: "A 'book,' in its popular sense, is understood to be a volume, bound or unbound, written or printed." In reading these accepted definitions of "abstract" and "book" together, an abstract book would appear to be a written or printed volume, bound or unbound, containing an abridgement, compendium, synopsis, or summary of the material facts. Of course in the instant case the "material facts" would be those facts determined relevant and necessary for the production of an adequate abstract of title. These requirements are set forth in 1 C.J.S. Abstract of Title, 4b at page 382, et seq., entitled, "What Abstract Should Contain," and reading in part: "An abstract of title should set forth or disclose all the facts of record relating to the title under investigation, so as to show its origin, course, and condition . . . . an abstract should contain a full summary or statement of the material parts of all grants, conveyances, wills, or other instruments or matters of record relied on as evidence of title, and of all instruments, judicial proceedings, and other records which in any way affect the title, and also of all encumbrances, liens, and other facts of record which may burden or impair the title, and, as to such encumbrances and liens, show whether they have been released. Even instruments which are invalid or ineffectual should be included, where they are such as to cast a cloud on the title; and doubtful encumbrances or other matters should be shown, rather than omitted. "It has been said that an abstract should be 'so full that no reasonable inquiry shall remain unanswered, so brief that the mind of the reader shall not be distracted by irrelevant details, so methodical that counsel may form an opinion on each conveyance as he proceeds in his reading, and so clear that no new arrangement or dissection of the evidence may be required.' " You are advised that this interpretation of the meaning of the phrase "abstract books" is solely a reiteration and compilation of accepted definitions of the individual words, and might not be in accordance with the definition deemed applicable by the court to a particular fact situation. The second matter about which you inquired involves arriving at a definition of "other system of indexes." Other is defined by Black's Law Dictionary, supra, as: "Different or distinct from that already mentioned; additional, or further." In the context of Section 1 O.S. 13 [1-13] the use of the word "other" would appear to be in reference to the phrase "abstract books" which immediately precedes it. System is defined by Black's Law Dictionary, supra, as an: "Orderly combination or arrangement, as of particulars, parts, or elements into a whole; especially such combination according some rational principle; any methodic arrangement of parts." A definition of "index" which would seem usable regarding the instant phrase was set forth by the court in the case of Perkins v. Strong, 36 N.W. 292, 295, 22 Neb. 725, and reads: "An 'index,' according to the dictionary, is that which points out; that which shows, indicates, or manifest. In ordinary use it is a table of references pointing out the page of a book where a certain article or subject may be found." Upon reading the definitions of these words utilized together, the phrase "other system of indexes" would literally appear to mean simply an orderly combination or arrangement of references pointing out the page of an abstract book where a certain article or subject may be found. It should be noted at this juncture, however, that the phrase "other system of indexes" has been interpreted by the Oklahoma Supreme Court to entail more than a mere copying of the indexes maintained by the County Clerk. In Application of Richardson, 199 Okl. 406,184 P.2d 642 (1947), the Court in referring to the County Clerk's indexes stated that: ". . .The indexes in many cases would fail to reveal the fact that deeds or other instruments of conveyance contained reservations or rights or interests in the property conveyed or other provisions restricting the use of the property conveyed, or the effect of the conveyance, the existence of which could be ascertained only by examination of the instruments themselves. Therefore, in order to protect the public from the making of abstracts by the use of insufficient records, the abstracter is required to procure equipment sufficiently adequate to enable him to serve the public properly. . . ." (Emphasis added.) (At 646.) Further, the phrase read in its entirety is: ". . .Other system of indexes compiled from the instruments of record affecting real estate in the office of the County Clerk, and not copied from the indexes in said office . . ." (Emphasis added.) The statute itself dictates that "other system of indexes" be more than copies of the County Clerk's indexes. Thus in the context of Section 13, the phrase would appear to mean an orderly combination or arrangement of references pointing out the pages of an abstract book where a certain article or subject may be found; also containing such information as may be deemed necessary to enable an adequate title search, without recourse to the county records. It should be noted that the caveat set forth above regarding this office's interpretation of the phrase "abstract books," would likewise be applicable to our interpretation of "other system of indexes." The case of the Application of Richardson, supra, would seem determinative of the answer to your third and fourth questions, and contains the following language: "Applicant asserts that by the provisions of Section 13 one desiring to engage in the business of abstracting is forced to buy or acquire a set of abstract books from someone already engaged in the business, and that this in effect creates a monopoly. No such requirement is contained in section 13, as one desiring to engage in the abstracting business is not prohibited from making a set of abstract books from the county records. . . ." It is apparent that Section 13 contemplates and the Oklahoma Supreme Court has acknowledged that books of record in the County Clerk's Office may be copied for compilation of abstract books, though mere copies of these records do not constitute "abstract books" within the terms of the statute. In this regard, however, one must be aware of the provisions of 1 O.S. 1 [1-1] (1971), which contains the following language: ". . . Provided, however, that the record shall in no case be taken from the county office to which they belong." A plain reading of this statute would seem to require that the copying of the County Clerk's records and indexes take place within the County Clerk's Office. The answer to your third question is deemed determinative of the answer to your fourth question inasmuch as there is no rational basis for distinguishing between the copying of the actual records and the copying of the clerk's indexes to such records. Therefore, your fourth question is likewise answered in the affirmative, though as noted earlier such copies would not be sufficient as an "other system of indexes" within the meaning of Section 13. Your fifth question inquires as to whether or not both "abstract books" and "other system of indexes" are required to comply with the requirements of Section 1 O.S. 13 [1-13]. A plain reading of this statute reveals that the requirement for abstract books and indexes is set forth in the disjunctive. The word "or" is utilized between the two possible methods set forth in the statute for maintaining the necessary records to engage in the abstracting business. In this regard, however, it should be noted that simply copying the indexes maintained by the County Clerk would not satisfy the requirements of the statute. See Application of Richardson, supra; Freeman v. Abstractors Board of Examiners, supra; and the discussion regarding the meaning of "other system of indexes" above. Thus your fifth question is answered in the negative in that both "abstract books" and an "other system of indexes" are not required by Section 13. Please note, however, that this Opinion does not reach a determination as to exactly what "other system of indexes" would suffice to meet the requirements of the statute as expanded upon by the court in Application of Richardson, supra. It should also be noted that although the questions presented for the Attorney General's consideration and the answers set forth herein are directed to the records of the County Clerk, Section 13 also requires that the independent set of abstract books or other system of indexes show: '. . .In a sufficiently comprehensive form all instruments affecting title to the real property on file or of record in the office of the . . . Court Clerk wherein such business is conducted." The Court Clerk's records, as they affect or pertain to real property situated in the county, are an integral part of any abstract of title. In summary, it is, therefore, the opinion of the Attorney General that an "abstract book" would appear to be a written or printed volume bound or unbound, containing an abridgement, compendium, synopsis, or summary of the material facts necessary for the production of an adequate abstract of title, and that "other system of indexes" would appear to mean an orderly combination or arrangement of references pointing out the pages of an abstract book where certain articles or subjects may be found as well as containing such information as is necessary to enable an adequate title search without recourse to the county records. It is also the opinion of the Attorney General that the books, records, files and indexes in the County Clerk's Office may be copied provided that said records are not removed from said office; however, as noted earlier mere copies of the County Clerk's records and the Clerk's indexes to those records are not sufficient as, ". . .An independent set of abstract books or other system of indexes compiled from instruments of record affecting real estate in the office of the County Clerk" within the meaning of Section 13. It is further the opinion of the Attorney General that both abstract books and indexes are not necessarily required in order to comply with the provisions of 1 O.S., 13, and that the adequacy or inadequacy of such books or indexes must be determined on an individual basis. (James R. Barnett)