# Frederick W. Blocki, Commissioner of Public Works, v. Krueger Bros. & Company.

## Gen. No. 12,013.

1. COMMISSIONER OF PUBLIC WORKS—*when should issue house moving permit.* Where a municipal ordinance requires that such a permit shall issue after certain prescribed conditions have been complied with, it is improper, when such conditions have been complied with, for the commissioner to refuse to issue such a permit; and it is not within his power to question the character of the applicant where such applicant has been duly licensed as required by ordinance.

2. FRONTAGE CONSENTS—*when prima facie executed by owners.* Frontage consents required by ordinance as a condition precedent to the granting of a house-moving permit, are, in a *mandamus* proceeding, *prima facie* presumed to have been signed by the owners of the frontage required where by the affidavits of the persons executing the same, accepted by the commissioner, they so appear.

*Mandamus* proceeding. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed July 3, 1905.

**Statement by the Court.** The appellee, a corporation, filed in the Circuit Court of Cook county a petition for a *mandamus* to compel the appellant to issue to it a permit to move a frame building. An answer was filed by the appellant to the petition. A demurrer to this answer was sustained. Thereupon the appellant filed an amended answer, to a portion of which the appellee demurred specially as immaterial, irrelevant and impertinent. This demurrer was also sustained, and the issue made by the petition and that part of

the answer not demurred to was submitted to a jury, which found for the petitioner, under an instruction of the court. A motion for a new trial was made and overruled, and judgment was rendered on the verdict awarding a writ of *mandamus*.

From that judgment an appeal has been taken to this court, and there are assigned as errors "the sustaining of the demurrer to the amended answer, the admission of immaterial and incompetent evidence, the refusal of the court to give an instruction offered by the appellant, and the giving by the court of the instruction in behalf of the appellee.

WILLIAM D. BARGE, for appellant; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

SULLIVAN & JARRETT, for appellee; DENIS E. SULLIVAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The petition in this case set forth the ordinance of the city of Chicago concerning permits to move buildings through the streets of Chicago. This ordinance provides that any person desiring to move a wooden building shall first obtain the written assent to such removal from persons owning a majority of feet front of lots in the same block in which it is proposed to locate such removed building, and also from a majority of persons owning feet front opposite the proposed location and within one hundred and fifty feet of the same. The ordinance then provides that, "Such person shall also file an affidavit subscribed and sworn to by one or more persons, in the following form as near as may be, viz.:

"And * * * each being duly sworn on oath deposes and says each for himself, that he was present and saw the persons whose names are subscribed to the above petition sign the same, and that each and every one of said persons claimed at the time of said signature that they were the owners of the property placed opposite their respective names

in the above petition or the attorneys or agents of the owners, with full authority to sign and act for them.    Subscribed and sworn to before me this    *    *    *    day of    *    *    * A. D. 190    ."

It also provides that no person except a licensed house mover shall remove buildings, and that any person engaging in said occupation must procure a license from the Commissioner of Public Works, and give a bond for $5,000 with good and sufficient sureties to be approved by said Commissioner that he will pay any damage which may happen to any pavement, street, sidewalk, telegraph pole or wire belonging to the city of Chicago or to any tree, and indemnify the city of Chicago against any liability accruing in consequence of the granting of the license or permits to move buildings.

The ordinance declares that upon the execution of a bond as described and its acceptance by the Commissioner of Public Works, a license shall be issued, but that before removing any building the licensed person shall in each instance obtain a permit to do so from the Commissioner of Public Works and pay a prescribed fee therefor.

"In accordance with" these foregoing provisions, it is provided that "permits to move buildings shall be granted."

The petition for a *mandamus* after thus setting forth the ordinance, represents that the petitioner is a duly licensed house mover under its provisions, and has duly filed its bond, which has been accepted.    It also asserts that the petitioner has many hundred dollars invested in machinery and other devices for moving houses; that it entered into a contract with the owners to remove a frame building from 5407 Normal avenue to 5349 Aberdeen street, and presented to the Commissioner of Public Works an application for leave to remove the building, which application contained the written assent to such removal from the persons owning a majority of the feet front of lots in the same block in which it was proposed to locate such building, and also of a majority of persons owning front feet opposite the proposed location and within 150 feet of the same, and that attached thereto

was an affidavit which stated that deponent was present and saw the persons whose names are subscribed to the petition sign the same, and that each and every one of said parties claimed at the time of said signature that they were at the time of said signature, the owners of the property placed opposite their respective names in the petition, or attorneys or agents with full authority to act.

The petition alleges that the building is now worth over fifty per cent of the first cost, and contains the certificate of the commissioner of buildings of said city, certifying to that fact; that the application was in due form, and that all the provisions of the ordinance had been complied with, and that the same had been O. K.'d, as to all of said requirements by the official in the office of the defendant who has direct charge of the issuing of house moving permits; that petitioner presented the application to defendant, and tendered the fee required by the ordinance and demanded that a permit be issued for the removal of the building, yet the defendant refused and still does refuse to issue the permit.

The defendant seems to have relied principally for a defense to this petition for *mandamus* on the matter to the statement of which in the amended answer a demurrer was sustained, namely, that the petitioner had in moving other houses damaged electric wires belonging to the city and electric wires and other property belonging to others, and then refused to pay for the damage, wherefore the respondent, "in order to protect the lives and property of the citizens has refused and still does refuse any house moving permit to the petitioner," and "will persist in such refusal until he is satisfied that petitioner will comply with the conditions upon which such permits are issued."

The respondent has assigned the action of the court in sustaining the demurrer to this defense as error, but it was plainly right. Neither the previous conduct of the petitioner nor its fitness to have a license is in issue here in any way. The Commissioner of Public Works in the city of Chicago is required by ordinance to issue permits to remove build-

ings in accordance with certain conditions. One of these conditions is that no person but a licensed house mover shall do the work. The only question that could be raised here as to the character of the petitioner is whether it is such a licensed house mover, and it is admitted that it is. After this defense was disposed of by demurrer, petitioner and respondent were at issue in fact only on the question whether or not petitioner in asking for the permit had complied with the provisions of the ordinance in presenting the assents of adjacent property owners.

. The petitioner offered in evidence the application which it made to the Commissioner for the permit. Upon it are the signatures of persons purporting to be the owners of property in the block to which the building was proposed to be moved, and of property in the block opposite and within 150 feet on either side of the proposed location of said building. There also appears on said application, although it is omitted from the abstract, the affidavit of one Arthur Atwood that he was present and saw the said persons sign their names and "that each and every of said parties claimed at the time of such signature that they were the owners of the property placed opposite their respective names in the above petition, or the attorneys or agents of the owners, with full authority to sign and act for them." This is exactly the language set forth in the ordinance for the affidavit required to be filed with the application and assents.

It is alleged in the petition, and it appeared in evidence without contradiction that the clerk in the office of respondent who had direct charge of the issuing of house moving permits, on the application being presented to him in proper hours and in due course of his business and with the offer of a proper fee, acknowledged, and indeed certified by a conventional memorandum on the paper, that it complied with the requirements of the ordinance, but insisted on something additional (permission from certain companies owning wires in the street) which the ordinance did not require, before he would issue the permit.

Counsel for the respondent insist that this is not suffi-

cient; that the duty of the respondent to issue the permit is not shown until by affirmative proof in this cause the ownership of the frontage signed for in the application is demonstrated to be in the signers. "Our contention was and is," is the language of respondent's argument, "that appellee was required to show that those who did assent were then the holders of the title to the lots for which they signed." With this contention we do not agree. It would place a very unreasonable construction on the ordinance. When the ordinance, after providing that the applicant shall procure the written assent of certain owners, proceeds to require the filing with a certain officer of an affidavit in a particular form to the execution of the signatures and the claim of ownership, we think the proper construction of it makes that affidavit at least the *prima facie* evidence of compliance wih the precedent condition, and that if the official or his authorized representative accepts and certifies the assents as sufficient in number and character, he cannot thereafter be heard to deny that sufficiency as a reason for not granting the permit.

The cases cited by appellant to show that a city is not bound or estopped in certain cases by the utterances of its officers, are entirely without importance in this appeal.

This action is not against the city. It is an attempt to secure from an official of the city that action which a law adopted by the city requires. It certainly cannot be said that the clerk, Mathews, to whom the defendant Blocki especially and directly entrusted the execution of a certain part of his official duties, could not in the matter of those very duties bind or estop Blocki.

As we read the record it was otherwise proved that the required proportionate amount of frontage in the two blocks involved was signed for, but if this were not true, we do not think that as to amount or ownership the respondent could be heard to repudiate the acknowledgment of his subordinate. It follows, therefore, that we think the trial judge was right in holding that there was no defense shown to the

petition, in instructing the jury to find for the petitioner, and refusing any instruction asked for by the respondent. The judgment of the Circuit Court is affirmed.

*Affirmed.*