JACK LINCOLN SHOPS, Inc., v. STATE DRY CLEANERS' BOARD et al.

No. 30788. Jan. 26, 1943.

Rehearing Denied March 30, 1943.

*135 P. 2d 332.*

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., Houston E. Hill, Asst. Atty. Gen., and Busby, Harrell & Trice, of Ada, for defendants in error.

HURST, J. This case involves the constitutionality of 59 O. S. 1941 §§ 741-756, regulating the business of cleaning, dyeing, and pressing. The plaintiff, the Jack Lincoln Shops, Inc., which is engaged in that business in Oklahoma City, but without a license as required by the act, sued to enjoin the enforcement of the act. Evidence was introduced by both parties. From a judgment denying the injunction, plaintiff appeals.

The act creates a "State Dry Cleaners' Board"; defines its duties and powers; authorizes the board to issue annual licenses and to revoke the same; fixes the annual license fees at from $3 to $40 based upon the volume of business done; authorizes the board to cause those working in such establishments to submit to medical examinations, and to promulgate rules governing employees suffering from contagious or infectious diseases; authorizes the board to conduct hearings and make investigations; makes it a misdemeanor to engage in such business without a license; authorizes an appeal to the district court from any action of the board under the act; authorizes the board to require all licensees to keep certain records and to file reports with the board; authorizes the board to promulgate such rules and regulations as may be necessary to control the business of cleaning, dyeing, and pressing with respect to identification of licensees, false or misleading advertisements and guarantees, forms of applications and licenses, classification of licensees as to grade and requiring the public posting of same; and authorizes the board to enforce and assist in the enforcement of fire, sanitation, labor, and other laws applicable to the industry. The act specifically provides that the board is not granted power "in any manner to fix prices."

Plaintiff contends that the act violates the due process clauses of the State (sec. 7, art. 2) and Federal (14th Amendment) Constitutions. It also contends that it violates section 2, art. 2, of the State Constitution, which provides that "all persons have the inherit right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry." It contends that the cleaning, dyeing, and pressing business "is a lawful, legitimate, private one," and that while there are many abuses in it which "may be remedied by appropriate regulation," the law goes too far, and that "control and supervision by licensing, and otherwise, as provided for under the act here" is not necessary. It admits that the rules followed in Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A. L. R. 1471, sustaining the constitutionality of the law authorizing the fixing of minimum prices barbers may charge, "are difficult to overcome."

1. Several of the states have statutes very similar to the one here under consideration. The statutes were stricken down, as being in violation of the due process clause, in its substantive aspect, in Kent Stores v. Wilentz (1936) 14 F. Supp. 1 (New Jersey statute); Becker v. State (1936) 37 Del. 454, 185 Atl. 92, and State v. Harris (1940) 216 N. C. 746, 6 S. E. 2d 854, 128 A. L. R. 658, and upheld in Miami Laundry Co. v. Florida Dry Cleaners (1938) 134 Fla. 1, 183 So. 759, 119 A. L. R. 956. In Smith Bros. Cleaners & Dyers v. People (1941) 108 Colo. 449, 119 P. 2d 623, it was held that the section of the law authorizing the state board to fix minimum prices was invalid in that it did not afford procedural due process of law. The regulatory features of the act were upheld and it was said that the price fixing feature could be enacted under the police power of the state without denying substantive due process. The North Carolina, Florida, and Colorado

cases, above, were by divided courts. An examination of the majority and dissenting opinions in the cited cases discloses that those sustaining such legislation are based upon the recent decisions of the United States Supreme Court, dealing with the due process clause, such as Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 514, 78 L. Ed. 940, 89 A. L. R. 1469; West Coast Hotel Co. v. Parish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330; Townsend v. Yeomans, 301 U. S. 441, 57 S. Ct. 842, 81 L. Ed. 1210; Olsen v. State of Nebraska, 313 U. S. 236, 61 S. Ct. 862, 85 L. Ed. 1305, 133 A. L. R. 1500, while those condemning the statutes generally rely on the earlier United States Supreme Court decisions, such as Adkins v. Children's Hospital (1923) 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238, which were departed from or overruled in the later cases. We are committed to the doctrine of the later cases (Herrin v. Arnold, above; Associated Industries v. Industrial Welfare Com., 185 Okla. 177, 90 P. 2d 899), which is that any business affected with a public interest is, under the police power of the state, subject to reasonable regulation for the public good; that there is no closed class or category of business affected with a public interest, but that the limitations on the exercise of the police power are plastic and will expand and adjust themselves to meet the needs of an advancing and changing civilization (11 Am. Jur. 1044); that the question as to what businesses are affected with a public interest, so as to be subject to regulation under the police power (11 Am. Jur. 1060), and the means best adapted to regulate them (11 Am. Jur. 1065), are primarily legislative questions, and the courts should indulge every possible presumption in favor of such statutes, and will not strike them down as being in violation of substantive due process unless they are clearly irrelevant to the policy the Legislature may adopt or are palpably unreasonable and arbitrary. Nebbia v. New York, above; 11 Am. Jur. 1081-1091; 12 C. J. 932, § 443.

That the statute in question was enacted under the police power is shown by the fact that it contemplates that the regulation will be with reference to the public health, the public safety with reference to fire hazards, and the general welfare with reference to the enforcement of the labor laws, and to prevent misleading or false advertisements or guarantees. The police power is the power to enact laws "to promote the order, safety, health, morals, and general welfare of society." 11 Am. Jur. 1014-1037; 12 C. J. 904.

The business of conducting cleaning, pressing, and dyeing establishments is closely akin to the business of conducting laundries, and in fact they are frequently conducted as one business. In 33 Am. Jur. 1-13, they are treated as being in the same category. And we have held that laundries may be regulated under the police power. Walcher v. First Presbyterian Church, 76 Okla. 9, 184 P. 106, 6 A. L. R. 1593. See, also, 12 C. J. 924, note 97.

We think the better view, legally speaking, and the one in accord with our decision in Herrin v. Arnold, above, is that the legislative determination that the business of cleaning, pressing, and dyeing clothes is affected with a public interest so as to be subject to reasonable regulation under the police power should be given effect by the courts. 33 Am. Jur. 3; 49 A. L. R. 110, note; 128 A. L. R. 678, note. The evidence introduced in the present case justifies this view. And as above stated, the plaintiff does not seriously question that this is so.

The question, then, is whether the present statute is palpably unreasonable and arbitrary in its requirements. The plaintiff points to no such provision unless it be the licensing feature. It does not contend that the license fees charged are unreasonably high. It says that the power to license carries with it the power to condition and prohibit, and that under its power to classify establishments it may fix prices, though it seems to admit that a provision for price fixing would not necessarily be fatal.

But we must assume that the board will make no unreasonable requirements or rules, or otherwise violate the letter or spirit of the law, and if it does, the aggrieved party will then have his remedy. We are unable to say that the determination of the Legislature that the business may best be controlled by licensing is unreasonable or arbitrary. See 33 Am. Jur. 5, 330, 336. It is not for us to say that a better method could be found, or that the method adopted is unwise. Nebbia v. New York, above.

We conclude that the law does not violate the due process clause in its substantive aspect. It is not contended that plaintiff and those coming under the act are denied procedural due process.

In its brief plaintiff suggests that "the judicial department should keep a close eye on the many regulations imposed upon private business," that there must be a "stop signal" on such regulation, and that if this act is upheld, other like encroachments upon private business will follow. This argument should be addressed to the policy forming branches of the government, the Legislature and Governor. If, as many believe, the trend in the direction of regimentation of the people, by the creation of administrative boards and commissions, has the effect of fostering monopoly, stifling competition, forcing out of business those who cannot comply with such laws and the regulations made thereunder, and holding up prices artificially, and is not wholesome, it is for the people, under a republican form of government, to erect the "stop signals," if they need to be erected. The courts are concerned only with the power to enact laws and their meaning. It is not for the courts to assume the right to pass upon the wisdom of such laws or to warn the legislative and executive branches. The tri-partite theory of governments prevents us doing so.

2. For the reasons above given, the act does not deprive plaintiff of rights guaranteed it by section 2, art. 2 of the Constitution. Those rights are subject to reasonable regulation under the police power. By complying with the law and valid rules and regulations that may be made thereunder, the plaintiff may continue to enjoy the rights thus guaranteed. Herrin v. Arnold, above; Croxton v. State, 186 Okla. 249, 97 P. 2d 11.

It is not contended that the statute delegates legislative power to the administrative board created to administer it, or that it violates any other constitutional provision.

Judgment affirmed.

GIBSON, V. C. J., and RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. CORN, C. J., and BAYLESS and WELCH, JJ., dissent.